No. 11-4222-cv
AIG v. Guterman

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of September, two thousand twelve.

PRESENT: GUIDO CALABRESI,
SUSAN L. CARNEY,
*Circuit Judges*.[*]

---

AMERICAN INTERNATIONAL GROUP,
INC. AMENDED AND RESTATED
EXECUTIVE SEVERANCE PLAN,
 *Plaintiff –Cross-Defendant–Counter-Defendant–Appellee*,

  v.           No. 11-4222-cv

STEVEN GUTERMAN,
 *Defendant–Cross-Claimant–Counter-Claimant–Appellant*.

---

FOR APPELLANT:  Paul W. Mollica (Wayne N. Outten, *on the brief*), Outten & Golden LLP, Chicago, IL.

---

[*] The third judge originally assigned to the panel was unable to hear the case because of a health issue. The two remaining members of the panel, who are in agreement, have decided the case. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457, 458–59 (2d Cir. 1998).

FOR APPELLEE:           Patrick W. Shea (Marc E. Bernstein, *on the brief*), Paul Hastings LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Steven Guterman, a former executive at American International Group, Inc. ("AIG"), appeals from the District Court's award of summary judgment to the AIG Amended and Restated Executive Severance Plan (the "Plan") in this ERISA benefits case. We assume the parties' familiarity with the facts and the record of prior proceedings.

From 2001 to 2009, Guterman served as a Senior Managing Director and the Head of Global Business Development for a division of AIG known as AIG Investments, and, concurrently, as a Vice President of AIG, the parent organization. In September 2009, as part of a major reorganization, AIG offered Guterman the job of Global Head of Retail Sales in place of his previous position. The newly-offered position carried less responsibility than Guterman had enjoyed in his prior roles and promised reduced (but still substantial) compensation. Guterman did not accept the new position by the deadline set by AIG, and then left AIG's employ. Whether his employment ended pursuant to a termination (as Guterman contends) or a resignation (as AIG contends) determines Guterman's entitlement to severance benefits under the Plan.

The Plan is a so-called "top hat" plan, meaning primarily that it establishes the terms on which the company will make certain deferred compensation payments (here, severance payments) to highly-compensated executives. *See generally Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286-87 (2d Cir. 2000). Such plans are exempt from many of ERISA's provisions, and administrators of such plans are not subject to ERISA's fiduciary responsibility obligations. *Id.* The Plan at issue here assigns the role of administrator to the Compensation and Management Resources Committee (the "Plan Administrator") of AIG's board of directors. It expressly grants the Plan Administrator authority to interpret the Plan "in its sole discretion." Plan § VII.A (Ex. 5.A to Bernstein Decl., at 9).

After the events leading up to Guterman's departure, the Administrator determined that Guterman had resigned, and, accordingly, denied Guterman severance benefits under the Plan. Guterman sued. On summary judgment, the district court upheld the Administrator's determination, which it examined under an "arbitrary and capricious" standard of review.

In an ERISA benefits appeal, we review the district court's grant of summary judgment *de novo*, and apply the same legal standards as are required of the district court on its review of a plan administrator's determinations. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). When an ERISA plan explicitly vests its administrator with discretion to interpret the plan, federal courts may ordinarily overturn the administrator's benefits determination only upon a finding

3

that the determination is arbitrary and capricious. *Id.; see also Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Guterman maintains, however, that

with respect to top hat plans – particularly those administered by entities within

the corporate structure, which in some respect operate under an inherent conflict of

interest – we should apply a less deferential standard of review, even when the plan

expressly vests the administrator with discretion to interpret its terms. This is a

matter of some debate in the circuit courts of appeal. *Compare Goldstein v.*

*Johnson & Johnson*, 251 F.3d 433, 441-44 (3d Cir. 2001) (holding *Firestone Tire*

analysis inapplicable to top hat plans), *with Comrie v. IPSCO, Inc.*, 636 F.3d 839,

842 (7th Cir. 2011) (applying *Firestone Tire* and rejecting *Goldstein*'s analysis). We

have not previously addressed this question head-on. *See Paneccasio v. Unisource*

*Worldwide, Inc.*, 532 F.3d 101, 108-09 (2d Cir. 2008) (applying arbitrary and

capricious review to administrator's determination to terminate top hat plan

without examining whether a different standard of review might apply). We do not

reach this question here, however, because, even making a *de novo* determination

on the administrative record, we reach the same conclusion as did the

Administrator.

The record provides ample grounds for concluding that Guterman's departure

from AIG constituted a resignation for purposes of the Plan. As a part of the

reorganization, AIG was willing to continue Guterman's employment. It offered

Guterman a substantial position, albeit one with less responsibility and lower

compensation. Guterman had sufficient opportunity to accept the newly-offered

4

position.  He failed to do so by the deadline reasonably established by AIG, and which had already been extended once on Guterman's request.  Moreover, the Plan expressly precludes departing employees from asserting constructive discharge in support of a severance benefits claim.  It also provides that only those employees with the rank of Senior Vice President – which Guterman did not have – maintain eligibility for severance benefits when resigning for "Good Reason" (a term defined by the Plan to include "[a] diminution in the Eligible Employee's duties or responsibilities" or a "material reduction" in base salary or bonus opportunity).  Plan §§ IV, IV.K (Ex. 5.A to Bernstein Decl., at 2, 8).  Applying these Plan terms to the undisputed facts, we too conclude that Guterman "resigned," making him ineligible for a Plan severance payment.  He could have remained at AIG in a lesser role, yet he failed to accept the offered position by an established deadline.  Guterman's argument that he had been inadequately informed of the specifics of the new job is beside the point:  the job he was offered had a title and compensation terms, and was his to accept or reject.  By his actions, he rejected it.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

5